515 A.2d 16

**Helen Betz McMICKLE, Executrix of Estate of Matilda S. Betz, Appellant,**

v.

**GIRARD BANK.**

Superior Court of Pennsylvania.

Argued May 13, 1986.

Filed Sept. 15, 1986.

---

Donald Hayes, Philadelphia, for appellant.

Kenneth C. Frazier, Philadelphia, for appellee.

Before CAVANAUGH, WICKERSHAM and ROBERTS, JJ.

ROBERTS, Judge:

The sole issue presented for our review is whether a bank properly has made available to its customer a statement of account when the bank has sent this information to an

attorney, designated by the customer, who later is found to have forged checks with the customer's name. If the bank has met its obligation of making the financial records available, then 13 Pa.C.S.A. § 4406(d)[1] imposes a duty on the customer to discover and report to the bank any unauthorized signature that appears on an item listed in the statement within one year. Here, the trial court held that the bank had met its statutory duty of informing the customer and, consequently, the customer was obligated to notify the bank of the challenged payment. Because the customer failed to notify the bank in accordance with the one-year statute of limitation, the trial court concluded that the customer was barred from maintaining an action for unauthorized payment of forged checks. We agree and, therefore, affirm the order dismissing the present claim.

The relevant undisputed facts are: plaintiff-appellant, Helen Betz McMickle, was appointed executrix of the estate of her mother, Matilda Betz. In carrying out her duties as executrix, McMickle opened a checking account with defendant-appellee, Girard Bank. Additionally, she retained the services of attorney Frederick D. Duden, as counsel for the estate. McMickle designated Duden as the person who should receive bank statements and cancelled checks from Girard.

Duden subsequently forged McMickle's name on two checks. He perpetrated the fraud by informing McMickle that checks needed to be drawn on the account for the payment of federal and state taxes. Having indicated to McMickle the amounts of the necessary payments, Duden then prepared the forged checks, naming himself as the payee rather than the appropriate government agency. The first check, in the amount of $18,058.50 and dated May 27, 1976, was shown as having been paid in the June 4, 1976 statement sent by Girard to Duden. The second check, in the amount of $22,100.00 and dated June 30, 1976, was

1. 13 Pa.C.S.A. § 4406 codified § 4–406 of the Uniform Commercial Code. *See* Act of November 1, 1976, P.L. 255, No. 86, § 1, effective Jan. 1, 1980.

reflected in the July 7, 1976 statement. Although the record establishes that McMickle inspected the cancelled checks and statements in late 1976 and again in September of 1979, it was not until January of 1980, after learning of Duden's disbarment and imprisonment for prior thefts from estates, that McMickle notified Girard and demanded reimbursement for the amount paid on the challenged checks.

Section 4406(d) imposes an absolute one-year time limit for a customer to notify his or her bank of the unauthorized signature. The statute provides:

> Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (a)) discover and report his unauthorized signature or any alteration on the face or back of the item ... is precluded from asserting against the bank such unauthorized signature or indorsement of such alteration.

13 Pa.C.S.A. § 4406(d). *See Hardex-Steubenville Corp., Inc. v. Western Pennsylvania National Bank,* 446 Pa. 446, 285 A.2d 874 (1971) (applying former codification of § 4406(d) in 12A Pa.S. § 4406(4)). The only prerequisite to the imposition of the one-year statute of limitations is that the bank make "available" to the customer a statement of account and the accompanying items. Here, despite McMickle's argument to the contrary, it must be concluded that Girard made "available" the necessary financial records in 1976.

As the court found, McMickle had designated a person to receive the statements of account and cancelled checks. It surely now would be patently unjust, as well as a total disregard for the plain language of § 4406, to subject Girard to liability because it in good faith followed McMickle's instruction. Section 4406(a), in pertinent part, provides that a bank may make the statement and related items available to the customer in a "reasonable manner." Girard's sending the required records to Duden, the party designated by the executrix to be the recipient, constitutes a

"reasonable manner" in which to make this information "available" to McMickle. Having chosen the means by which Girard should inform her of the financial status of the estate account, McMickle now is precluded from asserting the items and statements were not made "available" in a "reasonable manner."

By enacting § 4406(d), the legislature has placed the responsibility with the customer to detect unauthorized signatures within one year after a bank provides the necessary financial records. Here, Ms. McMickle did not inform Girard of the perpetrated fraud until January of 1980, approximately three and one-half years after Girard had provided her with the two account statements containing the two challenged payments. Clearly, Ms. McMickle has not met the duty of notifying Girard within one year after she was provided information of the financial activity in the account.

Accordingly, pursuant to 13 Pa.C.S.A. § 4406(d), Ms. McMickle is barred from maintaining a claim of unauthorized payment against Girard.

Order affirmed.